UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GUIDE TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-cv-1542-DFH-JMS |
| | ) | |
| TOM KILLEEN, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION

Plaintiff Guide Technologies, LLC has brought suit in this court against its

former employee, defendant Tom Killeen, alleging that Killeen used Guide's

confidential information to submit a competing proposal to one of Guide's clients,

causing that client to end its business relationship with Guide. Guide brings

claims under the Indiana enactment of the Uniform Trade Secrets Act and the

Indiana Crime Victim Relief Act, and for breach of fiduciary duties, tortious

interference with a business relationship, and conversion. Killeen has moved to

dismiss Guide's second amended complaint in its entirety under Federal Rule of

Civil Procedure 12(b)(2), arguing that this court lacks personal jurisdiction over

him. The court finds personal jurisdiction to be lacking. Rather than dismissing

Guide's case, the court transfers it to the Southern District of Ohio.

*Standard for Dismissal*

When personal jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Without an evidentiary hearing on this issue, plaintiff Guide need only make a *prima facie* showing that Killeen is subject to personal jurisdiction in Indiana. *Id.* Guide is entitled to the benefit of its allegations unless those allegations are contradicted by the defendant's affidavits. Where Killeen has challenged Guide's allegations with evidence, Guide must come forward with some evidence on the point to support personal jurisdiction. *Id.* at 783. Any conflicts in affidavits and other specific evidence must be resolved in Guide's favor, *id.* at 782, but "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Search Force, Inc. v. Dataforce Int'l, Inc.*, 112 F. Supp. 2d 771, 774 (S.D. Ind. 2000) (Tinder, J.) (granting motion to dismiss for lack of personal jurisdiction), quoting *Cushing v. City of Chicago*, 3 F.3d 1156, 1161 n.5 (7th Cir. 1993).

*Relevant Facts*

During the relevant time period, Killeen was a resident and citizen of the State of Georgia. He was hired by Guide in 2003. Killeen Aff. ¶¶ 2-3. Guide was and is an Indiana limited liability company with its headquarters in Indianapolis,

Indiana and another office in Cincinnati, Ohio. Meadows Aff. ¶¶ 5, 7-8.[1] Killeen believed Guide's main office was located in Ohio. Killeen Supp. Aff. ¶ 1. Three employees regularly worked from the Ohio office, and five regularly worked from the Indianapolis office. The remainder, including Killeen, worked remotely from their homes or at customer locations. Meadows Aff. ¶¶ 12-14; Killeen Aff. ¶ 17. According to a December 2007 employee list, twenty of Guide's twenty-five employees reported to the Ohio office. Killeen Supp. Aff. ¶ 4, Ex. 1. David Meadows, a part-owner of Guide, was a citizen of Indiana, and Doug Bulla and Fred Cramer, the other two part-owners, were citizens of Ohio. Meadows Aff. ¶¶ 2-4.

During his employment, Killeen managed a group that functioned as part of the Information Technology department for SourceOne Healthcare Technologies. Meadows Aff. ¶ 19; Killeen Aff. ¶ 14. Killeen did the work for SourceOne either from his home in Georgia or in Ohio or Florida. Killeen Aff. ¶ 17, 18. Most of Killeen's communications with Guide were directed to individuals working in Guide's Ohio office. Killeen Aff. ¶ 27. He was supervised by Guide employees in the Cincinnati office, and his performance reviews were conducted out of that office. Killeen Aff. ¶¶ 11, 30. Killeen communicated with Meadows and other employees in the Indianapolis office by phone and e-mail on a regular basis, but

---

[1]Guide's website refers to the Cincinnati office as its "corporate office," and its Indianapolis office as its "administrative office." Meadows Aff. ¶ 9; Def. Ex. A.

he did not travel to Indiana in the course of his employment. Meadows Aff. ¶¶ 24, 31; Killeen Aff. ¶ 25.

Killeen contacted Guide in Indianapolis to request and obtain reports comparing SourceOne's projected project budget to its actual operating expenses. Meadows Aff. ¶ 33. Guide maintained such information in Indianapolis, along with all billing and invoice information for all of its customers, including SourceOne, Meadows Aff. ¶ 35, but Killeen did not know where Guide maintained any of its electronic information. Killeen Supp. Aff. ¶¶ 12, 15. He knew that Guide maintained a server in its Ohio office, but he did not know if Guide also had any servers located in Indiana. Killeen Supp. Aff. ¶¶ 13, 14.

In 2006, Guide and Killeen engaged in negotiations on Killeen's compensation. Meadows had several phone calls with Killeen. On more than one occasion, Killeen threatened to quit and take SourceOne with him if Guide did not meet his salary demands. Meadows Aff. ¶ 32. In 2008, Guide and SourceOne began negotiating a new contract. Meadows Aff. ¶ 48. Meadows was involved in the negotiations, as was Killeen, who was involved in preparing the bid that Guide submitted to SourceOne. Meadows Aff. ¶¶ 49-50. Guide now contends that Killeen misused Guide's confidential information to prepare and submit competing bids to SourceOne. Meadows Aff. ¶¶ 53-54; see also Sec. Am. Compl. ¶¶ 14-20. SourceOne terminated its business relationship with Guide on September 30, 2008, and Guide believes SourceOne did not accept its bid and terminated its

services because of Killeen's competing bids.  Meadows Aff. ¶¶ 55-56.  Guide contends that the loss of SourceOne's business directly harmed its financial condition, lowered its income and profits, and harmed its ability to meet its financial obligations.  Meadows Aff. ¶ 57; see also Sec. Am. Compl. ¶ 21.

*Discussion*

When federal law does not authorize nationwide service of process, a federal district court has personal jurisdiction over a non-resident defendant if a court of the state in which it sits would have such jurisdiction.  *Purdue Research Foundation*, 338 F.3d at 779; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  In Indiana, personal jurisdiction depends on whether the requirements of the state long-arm statute are met and whether federal due process requirements are satisfied.  *Purdue Research*, 338 F.3d at 779; *Brockman v. Kravic*, 779 N.E.2d 1250, 1255 (Ind. App. 2002).  Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute governing the extent of personal jurisdiction.  It provides in part that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  This provision "was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause."  *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

Guide concedes that Killleen lacks the extensive contacts with Indiana necessary to support general jurisdiction in the state, but Guide argues that the court may exercise specific jurisdiction over Killeen in this case. Pl. Response 7. Specific jurisdiction applies when the controversy arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction requires an individualized evaluation of the facts of a case and "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

Guide relies on the "effects test" to establish specific jurisdiction over Killeen in Indiana. Under the "effects test," intentional infliction of harm to a plaintiff in the forum state is a sufficient basis for finding personal jurisdiction. See *Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (in light of knowledge that article written and published in Florida and distributed nationwide would be injurious to plaintiff who was in California and who was the focal point of both the article and the harm, defendants could reasonably anticipate being haled into court in California to answer for the truth of the statements in their article); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (reversing dismissal on personal jurisdiction grounds of lawsuit brought against California company accused of contacting Illinois company's customers in New Jersey because foreseeable injury to plaintiff occurred in Illinois); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, Ltd. P'ship*, 34 F.3d 410, 411-12 (7th Cir. 1994) (defendants, in attempting to take commercial advantage of Indianapolis Colts' prior identity, were subject to

personal jurisdiction in Indiana because they assumed the risk of injuring valuable property located in Indiana); see also *Nerds on Call, Inc. (Indiana) v. Nerds on Call, Inc. (California)*, 598 F. Supp. 2d 913, 919-920 (S.D. Ind. 2008) (on reconsideration, finding no jurisdiction over a California defendant accused of trademark infringement where the plaintiff failed to come forward with evidence that the defendant acted with the intent to enter Indiana or harm the Indiana plaintiff, and the relevant alleged injury could be understood as having taken place in California, not Indiana). Without intentional actions by the non-resident defendant causing foreseeable harm in the forum state, there can be no personal jurisdiction under the effects test.

Here, Guide alleges that Killeen intentionally misappropriated information housed in Indiana causing Guide to lose an existing client and a prospective client, resulting in financial harm to Guide in Indiana, and that a "reasonable person in Killeen's position would know that misappropriating information housed in Indiana puts him at risk of being 'haled into Court' here." Pl. Response 8-9. Working under the assumption that Guide's allegations are true, for purposes of personal jurisdiction the question is not simply whether Killeen intended to harm Guide but whether Killeen intended to harm Guide *in Indiana*. The alleged fact that Guide happened to suffer harm in Indiana is insufficient. Guide must show that Killeen intentionally directed his actions towards Indiana, which, on the submitted papers, it cannot do. Guide's unilateral decision to maintain confidential information in Indiana is not sufficient to show that Killeen directed

his alleged actions towards Indiana. After all, Guide might have maintained this information anywhere, and it cannot rebut Killeen's assertion that he believed all of Guide's servers were in Ohio, not Indiana. Guide asserts that "a reasonable person" would have known Killeen's alleged actions would have caused harm to an Indiana resident. The standard is not what a reasonable person would have known, but what *Killeen* would have known. Guide has failed to show that Killeen would have foreseen that his alleged actions would cause harm in Indiana, and thus has not demonstrated the minimum contacts necessary for this court to exercise jurisdiction over Killeen.

Having found personal jurisdiction to be lacking in this district, rather than dismissing Guide's case the court transfers it to the Southern District of Ohio. 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district court may transfer an action even if it had no jurisdiction over the defendant to begin with. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-67 (1962). "Congress enacted § 1406(a) to avoid 'the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn.'" *Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 608 (7th Cir. 2003), quoting *Goldlawr, Inc.*, 369 U.S. at 466. Killeen, although he apparently did not know it, worked for an Indiana

company. Guide's choice to pursue its claims against him here was an honest one, if erroneous. Killeen believed that Guide's main office was in Ohio, he was supervised from the Ohio office, and he knew that Guide maintained a server in Ohio. Killeen Aff. ¶¶ 11, 30; Killeen Supp. Aff. ¶¶ 1, 13. He traveled to Ohio for work, and most of his communications with his employer were directed to individuals working from Guide's Ohio office. Killeen Aff. ¶ 17, 18, 27. Section 1406(a) will serve justice here so that Guide's claims may be heard on their merits, but in a proper venue. Accordingly, the court transfers this action to the Southern District of Ohio, Western Division.

     So ordered.

Date: May 20, 2009

_David F. Hamilton_

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jeffrey B. Halbert
STEWART & IRWIN P.C.
jhalbert@silegal.com

Laurie E. Martin
HOOVER HULL LLP
lmartin@hooverhull.com, rmiller@hooverhull.com

Alice McKenzie Morical
HOOVER HULL LLP
amorical@hooverhull.com, rcohen@hooverhull.com

Suzanne S. Newcomb
STEWART & IRWIN P.C.
snewcomb@silegal.com